## BROWN v. GRAY.

1. LEASES—CONTRACTS—VALIDITY.
    A contract for a lease made on Sunday is invalid.

2. WITNESSES—CONVERSATIONS—ADMISSIBILITY—STATUTES.
    In an action by a tenant against the executor of the land-
    lord for damages for personal injuries due to failure to
    repair a walk on the premises, the testimony of the ten-
    ant, and her husband, as her agent, as to a conversation
    with an agent of the landlord, in the presence of the
    latter, relating to a promise to repair, is inadmissible
    under 3 Comp. Laws 1915, § 12553, relating to the admissi-
    bility of testimony of persons as to transactions with
    deceased persons.[1]

3. LANDLORD AND TENANT — LEASES — SUBSEQUENT AGREEMENT TO
    REPAIR—CONSIDERATION.
    A promise to repair leased premises made subsequent to
    the making of the lease is without consideration and un-
    enforceable.

Error to Wayne; Perkins, J., presiding. Submitted
October 4, 1917. (Docket No. 12.) Decided December
27, 1917.

Case by Laura F. Brown against Alfred A. Gray
for personal injuries. On the death of defendant,
Frederick B. Gray, his executor, was made defendant.
Judgment for defendant on a directed verdict. Plain-
tiff brings error. Affirmed.

*Albert E. Sherman*, for appellant.

*A. G. Pitts* (*Rowland M. Connor*, of counsel), for
appellee.

---

[1]Authorities discussing the question as to competency of a
party to deny a transaction with a person since deceased, see
notes in 21 L. R. A. (N. S.) 755; 42 L. R. A. (N. S.) 298.

STONE, J. This action was brought by a tenant against Alfred A. Gray, her landlord, to recover damages for the alleged negligence of the defendant in failing to repair a certain walk on the premises, at the side of the rented dwelling house, by reason of which negligence the plaintiff fell and was injured while passing over said walk. After issue was joined, the defendant died, leaving a last will and testament. The death was suggested of record, and the case proceeded against the executor. The declaration alleged that:

"Beginning at or near the front of said dwelling house, and extending around the side and rear of the said building, was a certain wooden walk, and that at the time of the letting and the leasing of the said premises as aforesaid, to wit, May, 1914, the said walk was designated by the said defendant as a means of ingress and egress to the several rooms of the said building. Further, plaintiff avers, and charges the fact to be, that at the time of the leasing of the said premises aforesaid the said walk was out of repair, and that the said plaintiff and her husband, to whom the premises were leased, called the attention of the said defendant to the defective condition of the said walk. and did then and there state to the said defendant that, if the said premises were leased, the walk would have to be repaired and fit for use. Whereupon the said defendant stated to the said plaintiff and her husband that, if they would lease the said premises, the said walk would be immediately repaired and put in a safe and proper condition for the ordinary use of the plaintiff and others."

Then follow the allegations of duty of defendant to repair the said walk, and the neglect to do so, with resulting damages.

Upon the trial it appeared that the first interview relating to the renting was had by the plaintiff and her husband, not with the landlord, Alfred A. Gray, but with a Mr. Dailey, who had the key of the premises, and, as claimed by plaintiff, represented himself

to be the janitor of Mr. Gray, of a building next door. It was undisputed that this interview occurred on Sunday. On that occasion the plaintiff's husband paid Mr. Dailey the sum of $10 to apply on the rent, which was to be $30 a month, and they were to move in on the Wednesday following. The plaintiff was permitted to testify, under objection, to what Mr. Dailey said on this Sunday, as follows:

"*Q.* State what Mr. Dailey said.

"*A.* Well, it was through the conversation of us all there; we spoke about the repairs of the sidewalk, because it was in such bad condition. He said he would see that everything was fixed up, and that they would build a new sidewalk—it needed it—and they would put in cement.

"*Q.* Now that was at the first renting of the premises?

"*A.* Yes, sir."

She then testified on cross-examination to another talk with Mr. Dailey about repairs, as follows:

"*Q.* When did you have this talk with Mr. Dailey about the repairs? When you moved in?

"*A.* Yes, sir.

"*Q.* How long after?

"*A.* Well, it was the day we paid the balance of the rent, the $20. We moved in on Monday. We got two rooms so we could move, but our rent did not begin until the following Wednesday, when we paid the balance of $20; that is, the Wednesday after the Sunday, when we were first there.

"*Q.* Then you took possession, full possession, and your rent commenced on the following Wednesday, which was May 20th?

"*A.* We had the talk with Mr. Dailey about the repairs on Wednesday, when we paid the balance of the rent. The conversation was in our kitchen, 903 Third street. Mr. Dailey had come over, and it was in the forenoon some time. Mr. Alfred A. Gray was present.

"*Q.* And it was at that time when Mr. Gray—Mr. Dailey made these representations?

"*A.* Yes, sir; he was ordered to.

"*Q.* And was that the only time Mr. Dailey said anything about repairs?

"*A.* No; several times, and on several occasions, after that. Pretty nearly all the time we lived there.

"*Q.* When was the next time Mr. Dailey made any representations or promises relative to repairs?

"*A.* Well, it was about two weeks before I got hurt."

The plaintiff continued to live in the house about four months, and was injured on September 5, 1914. Charles Brown, the husband of the plaintiff, testified substantially the same as the plaintiff relating to what took place on Sunday, and further as follows:

"*Q.* Mr. Brown, when was the first time you had any discussion with Mr. Dailey about repairs, if ever you had any?

"*A.* Oh, yes; I did, the day that I paid the balance of the rent on Wednesday. I called his attention there, and then I told him. I think it was on a Sunday.

"*Q.* Now, tell the court and jury what happened, and what conversation you had, and who was present on the following Wednesday.

"*A.* Well, on that day, on Wednesday, when I paid the balance of the rent, that was $20, we had a conversation about the sidewalk, and about repairs, and Mr. Gray was there at the time. Mr. Dailey brought Mr. Gray in and introduced me to him; that was the first time I had seen Mr. Gray, and I called Mr. Gray's attention about the sidewalk, and shape it was in."

Here, upon the motion of defendant's counsel, this last testimony as to what occurred in the presence of the deceased was excluded, on the ground that witness was plaintiff's agent in the making of the contract, and the matters were equally within the knowledge of deceased, to which ruling plaintiff's counsel excepted. At the close of the plaintiff's case the trial court directed a verdict and judgment to be entered for the defendant, mainly upon the ground of the contributory negligence of the plaintiff by reason of her acquaintance with the conditions, upon the authority of *Town*

v. *Armstrong,* 75 Mich. 580 (42 N. W. 983), and like cases, and distinguishing the case from *Nutter* v. *Colyer,* 180 Mich. 107 (146 N. W. 643). The plaintiff has brought the case here for review, and error is assigned because the trial court directed a verdict for the defendant, and refused to submit the case to the jury.

We are of the opinion that under the testimony, and upon the whole case as made by the plaintiff, the court did not err in the course taken. From the testimony above quoted it is apparent that the plaintiff's case was a weak one at best. The Sunday conversation with Dailey could not be relied upon as constituting a valid contract with the defendant testator, even if Dailey had authority to bind him, which did not appear. The testimony of both the plaintiff and her husband, as her agent, of what was said in the presence of the deceased, was, we think, properly excluded under the statute. Section 12856, 5 How. Stat. (2d. Ed.) ; Act No. 314, Pub. Acts 1915, chap. 17, § 65 (judicature act), (3 Comp. Laws 1915, § 12553). If it were conceded that by other testimony it appeared that the contract for the lease was made on the said Wednesday, it appearing that there was no competent evidence of an agreement on that day to repair the walk, any subsequent agreement to repair would be without consideration, and unenforceable, under the authority of *Rhoades* v. *Seidel,* 139 Mich. 608 (102 N. W. 1025). So, in any view of the case which we are able to take, under the evidence, the plaintiff failed to make a case for the jury, and the trial court did not err in directing a verdict and judgment for the defendant.

The judgment of the circuit court is therefore affirmed.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.